IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAMAR H. RECTOR, GE-5412, )
    Petitioner, )
     )
    v. ) 2:12-cv-1376
     )
JEROME WALSH, et al., )
    Respondents. )

REPORT and RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the petition of Lamar H. Rector for a writ of habeas corpus (ECF. 5) be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II. Report:

Lamar H. Rector, an inmate at the State Correctional Institution at Dallas has presented a petition for a writ of habeas corpus

Rector is presently serving a life plus twenty to forty year consecutive sentence imposed following his conviction by a jury of first degree murder, criminal attempt, aggravated assault and carrying a firearm without a license at Nos. CP-02-CR-1674-2004 and CP-02-CR-7716-2004 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on May 5, 2005.[1]

    An appeal was taken to the Superior Court in which the issues presented were:

1. Was the evidence insufficient as a matter of law to sustain the convictions insofar as the Commonwealth failed to prove beyond a reasonable doubt that Mr. Rector was the person who committed the shootings based on his mere presence at some point in time on the night in question in the vehicle where the victims were found?

2. Did the trial court err in denying the defense proposed jury instruction modeled after federal criminal instructions which specifically informs the jury that a witness "who is shown to have used addictive drugs during the period of

---

[1] See: Petition at ¶¶ 1-6.

1

time about which the witness testified must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses' where the Commonwealth's case hinged on the witness's testimony and where the failure to charge the jury with the requested instruction deprived the jury of the knowledge of their right to consider the witness's testimony with greater scrutiny?[2]

On December 8, 2006, the judgment of sentence was affirmed[3] and on June 26, 2007 leave to appeal was denied by the Pennsylvania Supreme Court.[4]

A timely post-conviction petition was filed on January 3, 2008; a second amended post-conviction petition was filed on October 22, 2009[5] and relief was denied on July 27, 2010.[6] An appeal was taken to the Superior Court in which the issues presented were:

1. Did the trial court err in denying appellant's PCRA petition since trial counsel was ineffective for failing to secure appellant's presence at his 1/31/05 suppression hearing? Appellant was not present for the hearing and had a constitutional right to be present.

2. Did the trial court err in denying appellant's PCRA petition since trial counsel was ineffective for failing to question trial witness Ashlyn White, who was present at the scene alongside critical Commonwealth trial witness Djameel Moore, after he testified that he observed a man with a below waist black coat exit the car, rummage through the front s[eat], and run from Briggs' car? Trial counsel should have inquired if White observed anyone in or near the car, and if her vantage point was identical to Moore's, especially since Moore's testimony supported Briggs' testimony implicating appellant. Moreover, trial counsel was ineffective for failing to argue to the jury and highlight the vital inconsistencies in the testimony and observations of Moore and White.

3. Did the trial court err in denying appellant's PCRA petitioner since trial counsel was ineffective for failing to view and investigate the crime scene and interview Commonwealth witnesses Moore and White before trial, and for failing to more thoroughly cross-examine Moore about his observations after hearing the car crash?

4. Did the trial court err in denying appellant's PCRA petition since trial counsel was ineffective for introducing evidence regarding the substance of appellant's statement to the police that he was in Briggs' car and left a cigarette carton, which allegedly contained his fingerprint, immediately before Briggs and

---

[2] See: p.42 of the Commonwealth's answer.
[3] See: pp.105 - 115 of the Commonwealth's answer.
[4] See: p.178 of the Commonwealth's answer.
[5] See: pp.179-218 and 262-287 of the Commonwealth's answer.
[6] See: pp.326-327 of the Commonwealth's answer.

> Cleavenger were shot, especially since the Commonwealth had no intention of introducing that evidence at trial?
>
> 5. Did the trial court err in denying appellant's PCRA petition since trial counsel was ineffective for (A) abandoning his 1/18/05 suppression motion claim, during the 1/31/05 suppression hearing, that appellant's statement to police was involuntary since he was intoxicated when he talked to police on 1/21/04, and was never given <u>Miranda</u> warnings, (B) for abandoning his suppression motion claim that the photo array shown to victim Briggs was suggestive, (C) for abandoning his suppression claim that the fingerprint evidence on the cigarette carton should have been suppressed, for failing to retain an expert to rebut the Commonwealth's fingerprint identification, and for stipulating to the fingerprint identification, and (D) trial counsel was ineffective for failing to raise a suppression claim that appellant was forced to sign the pre-interrogation form?[7]

On August 10, 2011, the denial of post-conviction relief was affirmed and on March 6, 2012 leave to appeal was denied by the Pennsylvania Supreme Court.[8]

In the instant petition, executed on September 21, 2012, Rector contends he is entitled to relief on the following grounds:

> 1. Counsel was ineffective in that petitioner was not present at his suppression hearing and the record does not contain sufficient evidence to conclude that petitioner was present; nor does there exist a valid waiver.
>
> 2. Counsel was ineffective in that he introduced a highly incriminating, inadmissible statement the prosecution alleged petitioner made; meanwhile, the prosecution was in opposition to the introduction of the statement because they knew it was inadmissible where it violated the hearsay rule and <u>Miranda</u>.
>
> 3. Counsel was ineffective in abandoning the argument that the allege statement of petitioner was gained in violation of petitioner's right to <u>Miranda</u> warnings resulting in the alleged statement being inadmissible.
>
> 4. Counsel was ineffective for failing to seek suppression of the statement for violation of the hearsay rule. The record shows that no written statement by petitioner was produced; no detective notes were produced; and the detectives' testimony was from police reports that were merely recollections of their interview with petitioner.[9]

It is provided in 28 U.S.C. §2254(b) that:

---

[7] See: pp.353-354 of the Commonwealth's answer.
[8] See: pp.458-478, 553 of the Commonwealth's answer.
[9] See: Petition at ¶ 12.

3

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court

4

identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...

A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

That is, the state court determination must be objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855 (2010).

Because it would appear that the issues which the petitioner seeks to raise here were raised in the post-conviction proceedings, they are properly before this Court for consideration.

The background to this prosecution is set forth in the August 10, 2011 Memorandum of the Superior Court:

> On October 27, 2003, George Briggs ("Briggs") and his friend Mary Cleavenger ("Cleavenger") drove from Waynesburg, Pennsylvania to pick up a Lincoln automobile, belonging to Briggs, in the Hill District section of Pittsburgh. After picking up the Lincoln at 11:00 p.m., Briggs stopped at a bar on Fifth Avenue. While Cleavenger remained in the car, Briggs went into the bar and ran into an acquaintance, [Appellant]. After having a beer with [Appellant], Briggs returned to the Lincoln, and went to get gas on Center Avenue. Briggs then returned to Fifth Avenue. While driving past the bar where he had previously met [Appellant], Briggs noticed [Appellant], who was flagging Briggs down. Briggs stopped, and [Appellant] asked Briggs if he could drop [Appellant] off at this home on Bentley Avenue. Briggs agreed to do so. [Appellant] then got into the back seat of the Lincoln behind Cleavenger. When he got into the car, [Appellant] was carrying a carton of Newport cigarettes.
>
> Briggs turned off of Fifth Avenue onto Reed Street, and then onto Lombard Street. While driving along Lombard Street, Briggs lost consciousness. When he awoke, he was under the dashboard, and the Lincoln had crashed into a house.

5

Briggs noticed [Appellant] "rumbling" around in the front seat, where Cleavenger was seated. Brigg's grabbed Cleavenger's leg, which was shaking. Briggs then kicked open the driver's side door and saw [Appellant] running up an alleyway toward Lombard Street. Although he didn't see [Appellant's] face, Briggs identified [Appellant] from the jacket he was wearing, which was a three-quarter length black leather jacket. Briggs then got out of the car and walked over to Cleavenger's side of the car.

Briggs noticed a man and woman standing nearby, and the woman came over to help. Briggs then noticed that the back of his head was bleeding. Soon after the police, fire department, and paramedics arrived. Briggs was taken to the hospital, where it was determined that he had been shot in the back of the head. Cleavenger died at the scene of a gunshot wound to the side of her head.

The man and woman Briggs observed near the accident, Djameel Moore ("Moore") and Ashlyn White ("White"), were on Reed Street, coming from a MAC machine, when they observed a black Lincoln drive past. Moore heard a bang, which he thought was a gunshot, and then heard a crash. Moore and White went up the street and saw a car smashed into the side of the building. Moore saw a person dressed in black open the rear passenger door of the Lincoln, get out, go [to] the front passenger door, and then run away. Moore described the person who ran away as wearing a black coat, which was a little longer than waist-length. Moore went to a nearby house to call an ambulance.

White testified at trial that as she and Moore were walking from the MAC machine, White heard sounds of gunshots and a car wreck. White went to the car and checked on Cleavenger, who was bleeding.

Police detectives on the scene discovered two spend 9 mm shell casings one from the rear seat behind the driver and one from the floor of the rear seat on the passenger side. The detectives observed that Cleavenger had a gunshot entrance wound and an exit wound, and discovered a slug along the bottom of the door frame in the front passenger seat. They also observed a duffle bag and a carton of Newport cigarettes on the back seat.

An autopsy of Cleavenger revealed that she died from a gunshot wound to the head. Cleavenger also had a laceration on one of her fingers, from the same bullet which caused her head wound. A pathologist determined that the finger laceration was a defensive wound. The pathologist also determined that the gun had been discharged six to eight inches away from Cleavenger.

A ballistics expert who examined the two shell casings retrieved from the Lincoln concluded that they had been discharged from the same weapon. The expert also determined that the bullet (slug) that was recovered was consistent with one of the two shell casings. The expert indicated that Cleavenger's left hand was close to

the firearm at the time it was discharged, and that the firearm was within six inches of Cleavenger's head when it was discharged.

On November 5 2003, the police showed Briggs a photo array, from which he identified [Appellant] as the perpetrator. The police brought Briggs to the police department that same day "after receiving some information on persons" that may have been involved in the crime.

On January 31, 2004, the police went to a bar in Pittsburgh, after receiving information that [Appellant] was there. [Appellant] gave the police a false name; however, the police were able to confirm that he was [Appellant], and placed him under arrest.

At the police department, [Appellant] was given **Miranda** warnings. [Appellant] admitted that he was with Briggs on the night of the murder. [Appellant] indicated that Briggs had asked him if he had any drugs, and [Appellant] told Briggs that he could get him some. [Appellant] told the police that he had noticed that Briggs had a large amount of money on him, and stated that he was going to try to get that money by selling Briggs drugs or fake drugs. Upon leaving the bar, [Appellant] purchased a carton of cigarettes from a "junkie." [Appellant], Briggs, and Cleavenger then drove around but could not find any drugs for sale. At that time, [Appellant] stated that he got out of the car and Briggs drove away. [Appellant] indicated that he had forgotten to take his cigarettes. A fingerprint was found on the carton of cigarettes, which matched [Appellant's] fingerprint (record references and footnote omitted). [10]

Rector now alleges he is entitled to relief here on the basis of ineffective assistance of trial counsel. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

---

[10] See: pp.458-461 of the Commonwealth's answer.

outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

Petitioner first contends that counsel was ineffective for failing to require his presence at the suppression hearing. The Sixth Amendment as made applicable to the states by the Fourteenth Amendment guarantees a criminal defendant "the right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." Tennessee v. Lane, 541 U.S. 509, 523 (2004). A suppression hearing is generally regarded as a critical stage in the prosecution. See: Henderson v. Frank, 155 F.3d 159,165 (3d Cir. 1998).

This issue was raised at the post-conviction hearing conducted on July 14, 2010. At that time, the petitioner testified that he was not present at the January 31, 2005 suppression hearing and that at the time he made the statement to the police he was intoxicated and had never been advised of his Miranda rights (PCRA 7/14/10 pp.5,7,8,12-13,14). The petitioner's sister testified that she was at the suppression hearing and that the petitioner was not present (PCRA 7/14/10 pp.17,19).

Petitioner's trial counsel (PCRA 7/14/10 pp.4-5) testified that the petitioner was present at the suppression hearing (PCRA 7/14/10 pp.21,23,38-39); that if the petitioner had not been present he would have requested an on-the-record waiver (PCRA 7/14/10 pp.22-23); that he believed that the petitioner's statement was exculpatory in that it was a denial of his involvement (PCRA 7/14/10 p.31); that witnesses White and Moore never identified the petitioner as the individual they observed fleeing from the scene (PCRA 7/14/10 pp.36-37); that other than the petitioner's own allegation, there is nothing in the record demonstrating that he was intoxicated at the time he made the statement (PCRA 7/14/10 pp.39-40); that since the petitioner admitted being in the vehicle on the night in question, he did not believe there was any basis for moving for the exclusion of his fingerprints located in Brigg's vehicle (PCRA 7/14/10 p.41) and that there was nothing suggestive in the photo array shown to Briggs (PCRA 7/14/10 p.42).

8

In his December 10, 2010 Opinion denying post-conviction relief, the trial court wrote:

> While the record of the suppression [hearing] does not include any conversation or statements by the defendant, there are other indications from which the conclusion may be drawn that the defendant was indeed present. The minute clerk's notes from the case state, "And now this date, defendant present with counsel after hearing the motion to suppress statement, hereby denied." Additionally, at the jury trial, the court specifically asked defendant if he was present for all pretrial motions through the course and scope of individual jury selection and any matters, to which the defendant answered in the affirmative. These portions of the record together with the fact that the court did not ask defense counsel for a waiver of his client's presence (which the court does as a matter of course when a proceeding is taking place and the defendant is absent) indicates that the defendant was present for the suppression hearing (record references omitted).[11]

Thus, the issue presented was one of credibility and in that regard the conclusion of the fact-finder is entitled to a presumption of correctness where, as here, it is supported by the record. 28 U.S.C. 2254(e)(1); Roland v. Vaughn, 445 F.3d 671 (3d Cir.2006). For this reason, this claim does not provide a basis for relief.

Petitioner's next claim is that counsel was ineffective for seeking to introduce into evidence the petitioner's statement made during an interview with the police following his arrest. In that statement he conceded that he had been with Briggs on the night in question but denied any involvement in the criminal acts. As previously noted counsel testified at the second post-conviction hearing that in light of the evidence that the petitioner had been in Brigg's automobile, he believed that the petitioner's statement was exculpatory in that it was a denial of his involvement (PCRA 7/14/10 p.31).

Defense counsel's position was fully set forth in his testimony at the initial post-conviction hearing where he stated that the prosecutor

> was not going to enter the statement into evidence, and I said I was going to enter it because it was a statement that he, in fact, denied killing the individual… this was a way of introducing Mr. Restor's statement into evidence declining or saying that 'I did not shoot him' without offering Mr. Rector up for cross-examination in the trial of which he didn't want to testify … I wanted to get the statement in to say that he did not kill the lady … or shoot Briggs" (PCRA 3/17/09 pp.11-13. 21).

---

[11] See: pp.338-339 to the answer of the Commonwealth. In its answer, the Commonwealth corrects the record to reflect that "during the colloquy by Mr. Bills concerning Petitioner's waiver of his right to testify, Petitioner did not contest an assertion by Mr. Bills that he was present for pretrial motions" (answer at p.33).

9

Ultimately, the prosecutor introduced Rector's statement through Detective McGee when the trial court ruled it was not hearsay (PCRA 3/17/09 pp.11-12).

Thus, the petitioner's claim that counsel was ineffective for seeking to introduce his statement is meritless, in that the statement was introduced by the prosecutor. However, even if this was not the case, as a matter of sound trial strategy, defense counsel wanted the jury to hear petitioner's denials without the risks involved in calling him as a witness. As a matter of sound trial strategy, counsel cannot be deemed to have been ineffective for pursuing this course. Rolan v. Vaughn, supra.

Petitioner next contends that counsel was ineffective for failing to argue that petitioner's statement was secured in violation of Miranda v. Arizona, 384 U.S. 436 (1966) since the petitioner was intoxicated when he made his statement.[12] Clearly counsel sought to suppress this statement as it was the basis for the suppression hearing. Additionally, at trial when the statement was introduced, Officer McGee testified that when petitioner was taken into custody he was advised of his Constitutional rights and the petitioner signed an acknowledgment of having been so advised (TT.2/1/05 pp.183-184,186,188-189). Prior to trial, at the suppression hearing, Officer Trosky testified that the petitioner was advised of his Miranda rights and that he did not appear to be impaired (SH.1/31/05 pp.7-8,11). The post-conviction court found this testimony credible[13] and that conclusion is entitled to a presumption of correctness here. 28 U.S.C. 2254(e)(1); Roland v. Vaughn, supra.

Additionally, counsel cannot be deemed to have been ineffective for failing to raise a meritless claim. Real v. Shannon, 600 F.3d 302 (3d Cir.2010) and thus this claim does not provide a basis for relief here.

Petitioner's final contention is that counsel was ineffective for failing to seek to suppress his statement on hearsay grounds. Specifically, he contends that the introduction of his oral statement to Detectives McGee and Trosky constituted inadmissible hearsay.[14] This allegation is based on Rector's correct representation that he made an oral statement to the police which was

---

[12] We note petitioner's counsel deemed the statement helpful to the defense since it presented to the jury petitioner's claim that he was not involved in the shootings.

[13] See: p.344 of the Commonwealth's answer.

[14] The Commonwealth argues that this issue was not raised in the state court proceedings and for this reason is procedurally defaulted here. Nevertheless, since we conclude that the issue is meritless, it may be considered here. 28 U.S.C. 2254(a)(2).

neither recorded nor reduced to a writing signed by him, and the officers did not preserve their interview notes after the full statement was transcribed by them. (TT. 2/1/05 p.190).

Pennsylvania Rule of Evidence 803(25) provides that an exception to the hearsay rule applies to an admission by a party-opponent. This rule mirrors Federal Rule 801(d)(2). Unless alleged evidentiary errors rise to the level of a due process violation, they are not cognizable in a federal habeas proceeding. Keller v. Larkins, 251 F.3d 408 (3d Cir.2001). No such showing is made here and counsel cannot be deemed to have been ineffective for failing to raise this meritless issue. Real v. Shannon, supra. In addition, as observed above counsel believed that the petitioner's statement was a sound strategic move to present petitioner's denial of his involvement to the jury without petitioner having been called to testify as a witness where he would be subject to cross-examination.

Thus, because no showing is made here that Rector's conviction was obtained in any manner contradictory to federal law as determined by the Supreme Court nor involved any unreasonable application of that law, he is not entitled to relief here. Accordingly, it is recommended that the petition of Lamar H. Rector for a writ of habeas corpus (ECF. 5) be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this date and mailing them to United States District Court, 700 Grant Street, Pittsburgh PA 15219-1957. Failure to file timely objections will waive the right to appeal.

Respectfully submitted,
s/ Robert C. Mitchell

Filed: January 10, 2013          United States Magistrate Judge